IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERTA AHMED, | : | |
| *Plaintiff*, | : | |
| v. | : | Civil No. CCB 12-707 |
| THE SALVATION ARMY | : | |
| *Defendant*. | : | |

# **MEMORANDUM**

Plaintiff Roberta Ahmed ("Ms. Ahmed") brought this action against defendant The Salvation Army ("The Salvation Army" or "defendant"), alleging that The Salvation Army terminated her employment in violation of the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Now pending before the court are the following motions: (i) The Salvation Army's motion to dismiss or, in the alternative, for summary judgment (ECF No. 7); (ii) Ms. Ahmed's motion for partial summary judgment on the issue of her FMLA claim (ECF No. 12); (iii) Ms. Ahmed's motion for Rule 56(d) relief requesting time to conduct discovery on the issue of her ADA claim (ECF No. 13); and (iv) Ms. Ahmed's motion to file an amended complaint (ECF No. 14). The issues have been fully briefed, and the court finds no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, The Salvation Army's motion to dismiss or, in the alternative, for summary judgment will be granted; Ms. Ahmed's motion for partial summary judgment will be denied; Ms. Ahmed's Rule 56(d) motion will be denied; and Ms. Ahmed's motion to file an amended complaint will be denied as moot.

## BACKGROUND

Ms. Ahmed began her employment with The Salvation Army in 2008, working as a "Corps Accountant" in Annapolis, Maryland. (Compl. ¶ 9; Def.'s Mem. Summ. J., Decl. at ¶ 3.) In the fall of 2010, Ms. Ahmed's treating physician advised her that she would require open heart surgery to correct her aortic and mitral valve. (Pl.'s Mem. Partial Summ. J., Ex. 2 at ¶¶ 1, 2.) Around September 2010, Ms. Ahmed reported to her supervisor, Captain Richard New, that she had a heart-related condition that would require surgery and would cause her to be absent from work later that fall. (Def.'s Mem. Summ. J., Decl. at ¶¶ 4, 6.) Under The Salvation Army's leave policy, employees who require leave for a serious health condition can take leave under the FMLA. (Def.'s Mem. Summ. J., Decl. at ¶ 7, Ex. 2.)[1]

In an email dated October 20, 2010, Ms. Ahmed asked Heather A. Grueninger, The Salvation Army's Assistant General Secretary/Human Resources Director, to "explain the employee process for obtaining FMLA." (Def.'s Mem. Summ. J., Decl. at ¶ 7, Ex. 4.) Also on October 20, 2010, Ms. Ahmed informed Captain Richard New and Captain Ruth New—both of whom are Corps Officers for The Salvation Army—that she would need open heart surgery sometime in the middle of November and would be requesting FMLA leave to begin on the date of her surgery. (Def.'s Mem. Summ. J., Decl. at ¶ 8, Ex. 6; Pl.'s Mem. Partial Summ. J., Ex. 2 at ¶ 4.) At that time, Ms. Ahmed did not know a "firm date for surgery or necessary time for recovery." (Def.'s Mem. Summ. J., Decl., Ex. 6.) She explained, however, that her surgery

---

[1] According to The Salvation Army, Captain Richard New attempted to provide Ms. Ahmed with correspondence informing her of her rights and obligations under the FMLA, but Ms. Ahmed refused to accept such correspondence. (Def.'s Mot. Summ. J., Decl. at ¶ 7, Ex. 3, 5). Ms. Ahmed, however, contends that she never refused to accept this correspondence. (Pl.'s Opp'n at 1-2.) This purported factual dispute is without consequence as this fact is immaterial to the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a fact is material if it "might affect the outcome of the suit under the governing law").

would be scheduled sometime after her November 2, 2010 surgical consult appointment and her previous open heart surgery required eighteen weeks for recovery. (*Id.*)

On October 27, 2010, The Salvation Army responded by letter and provided Ms. Ahmed with several FMLA forms, including "Notice of Eligibility and Rights & Responsibilities," "Request for FMLA Leave," and "Certification of Health Care Provider." (Def.'s Mem. Summ. J., Decl. at ¶ 9, Ex. 7; Pl.'s Mem. Partial Summ. J., Ex. 2 at ¶ 5.) Although the letter stated The Salvation Army was "preliminarily designating [Ms. Ahmed's] leave as family and medical leave," it instructed Ms. Ahmed to return the Request for FMLA by November 3, 2010 and to return the Certification of Health Provider (the "Certification Form") by November 11, 2010. (Def.'s Mem. Summ. J., Decl. at ¶ 9, Ex. 7.)

On November 6, 2010, Ms. Ahmed submitted a Request for FMLA leave for the period from November 29, 2010 to February 18, 2011 along with the Certification Form signed by her health care provider, Dr. Duke Cameron. (Def.'s Mem. Summ. J., Decl. at ¶ 10, Ex. 8, 9.) Section III of the Certification Form, which was to be completed by Ms. Ahmed's health care provider, was left largely blank. (Def.'s Mem. Summ. J., Decl., Ex. 9.) The only information provided was a note in the "Additional Information" section identifying the name of the surgery—"For Redo Aortic + Mitral Valve Replacement"—and indicating that the surgery would take place on December 1, 2010. (*Id.*) Ms. Ahmed's heath care provider did not respond to the seven numbered questions in Section III of the Certification Form or their various sub-parts. (*See id.*) For example, the Certification Form did not contain any information regarding Ms. Ahmed's expected period of incapacity or the amount of leave that she would require following her surgery. (*See id.*)

The Salvation Army responded to Ms. Ahmed's Certification Form on November 11, 2010, informing Ms. Ahmed that her Certification Form was "not complete and [did] not have sufficient information" for an FMLA determination to be made. (Def.'s Mem. Summ. J., Decl., Ex. 10.) The letter and attached FMLA Designation Notice informed Ms. Ahmed that The Salvation Army could not designate her leave as FMLA, and it instructed her to "submit a complete and legible [Certification Form] by November 19, 2010" or her leave may be denied. (*Id.*) In response, Ms. Ahmed submitted a second Certification Form on November 18, 2010. (Def.'s Mem. Summ. J., Decl., Ex. 11.) The November 18 Certification Form was virtually identical to the November 6 Certification Form—the only change was made by Ms. Ahmed, who printed the name of the surgery more legibly in the "Additional Information" section. (*Id.*; Pl.'s Mem. Partial Summ. J., Ex. 2 at ¶ 9.) Like the November 6 Certification Form, the November 18 Certification Form did not provide any responses to the seven numbered questions or their various sub-parts, nor did it indicate Ms. Ahmed's expected period of incapacity or the amount of leave she would need following her surgery. (*See* Def.'s Mem. Summ. J., Decl., Ex. 11.)

On November 24, 2010, The Salvation Army again informed Ms. Ahmed that her Certification Form "did not include sufficient information for The Salvation Army to designate [Ms. Ahmed's] leave as Family/Medical Leave." (Def.'s Mem. Summ. J., Decl., Ex. 12.) The Salvation Army explained that some of the information needed to designate FLMA leave, including Ms. Ahmed's "ability to perform some or all of [her] job functions" and her "period of incapacity," was not completed. (*Id.*; Pl.'s Mem. Partial Summ. J., Ex. 2 at ¶ 10.) The Salvation Army also enclosed a new Certification Form and informed Ms. Ahmed that it would be "happy to reconsider [her] request for leave" if it received the Certification Form with all sections completed. (Def.'s Mem. Summ. J., Decl., Ex. 12.)

Ms. Ahmed did not submit an additional Certification Form, and beginning on November 29, 2010, she was absent from work. (Def.'s Mem. Summ. J., Decl. at ¶ 14.) On December 1, 2010, Ms. Ahmed underwent heart surgery and remained in the hospital through December 12, 2010. (Pl.'s Mem. Partial Summ. J., Ex. 2 at ¶ 11.) From December 12, 2010 through mid-January 2011, Ms. Ahmed was recovering from surgery at her home and was being cared for by her sister. (Pl.'s Mem. Partial Summ. J., Ex. 2 at ¶ 12.)

The Salvation Army's policies provide for termination of employment after three days of unauthorized absence. (Def.'s Mem. Summ. J., Decl. at ¶ 14 n.2.) On December 2, 2010, after Ms. Ahmed had been absent from work for three days, The Salvation Army sent Ms. Ahmed a letter to inform her that she was absent "without acceptable documentation." (Def.'s Mem. Summ. J., Ex. 13.) The letter instructed Ms. Ahmed to submit a completed Certification Form by December 8, 2010, as documentation for her unauthorized absences until that date and for any continued absences going forward. (*Id.*) The Salvation Army explained that the failure to do so would result in the termination of Ms. Ahmed's employment. (*Id.*) Some time after mailing the December 2, 2010 letter to Ms. Ahmed, The Salvation Army discovered that the postal service failed to scan the letter into its tracking system, and therefore could not confirm that Ms. Ahmed received the letter. (Def.'s Mem. Summ. J., Decl. at ¶ 15.) Therefore, The Salvation Army resent the December 2, 2010 letter via overnight mail on December 16, 2010, and it was received at Ms. Ahmed's residence the following day. (Def.'s Mem. Summ. J., Decl. at ¶ 15, Ex. 14.) The December 16, 2010 correspondence informed Ms. Ahmed that unless she submitted a completed Certification Form by December 21, 2010, it would be necessary for The Salvation Army to terminate her employment. (*Id.*)

Ms. Ahmed did not provide an additional Certification Form by December 21, 2010. (Def.'s Mem. Summ. J., Decl. at ¶ 16.) Accordingly, on December 29, 2010, The Salvation Army sent Ms. Ahmed a final letter explaining that after twenty-three days of unapproved absences, her employment with The Salvation Army was terminated. (Def.'s Mem. Summ. J., Decl., Ex. 15; *see also* Def.'s Mem. Summ. J., Decl., Ex. 16.)

In March 2011, Ms. Ahmed filed a charge of disability discrimination against The Salvation Army with the Maryland Commission on Human Relations (the "Commission"). (Pl.'s Mem. Partial Summ. J., Ex. 3.) After conducting an investigation, the Commission dismissed Ms. Ahmed's disability charge, concluding that her "disability played no factor in the determination to terminate [her] employment" and that The Salvation Army's actions "were found to be legitimate and non-discriminatory." (Def.'s Mem. Summ. J., Decl., Ex. 17 at 7.) Ms. Ahmed subsequently brought this suit for violations of the FMLA and the ADA arising out of her termination of employment by The Salvation Army.

## ANALYSIS

### I. The Dispositive Motions

As an initial matter, The Salvation Army has styled its pending motion as a motion to dismiss or, in the alternative, a motion for summary judgment.[2] Federal Rule of Civil Procedure 12(d) provides that when a court considers matters outside the pleadings, a motion to dismiss "must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

---

[2] In her opposition, Ms. Ahmed states that The Salvation Army moved only to dismiss the ADA claim and did not move in the alternative for summary judgment. (Pl.'s Opp'n at 1-2.) However, in its Motion to Dismiss / Motion for Summary Judgment, The Salvation Army expressly states that Ms. Ahmed "has failed to state a claim" under the ADA and that it is "also entitled to judgment with respect to the ADA claim." (Def.'s Mot. Summ. J. at 2.)

12(d). When the moving party expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur—the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Here, Ms. Ahmed received adequate notice (ECF No. 7) and has responded appropriately (ECF No. 13).

In deciding The Salvation Army's pending motion at to both the FMLA and ADA claims, this court must consider evidence outside the pleadings. Therefore, The Salvation Army's motion will be treated as a motion for summary judgment and will be reviewed under the Rule 56 standard. *See Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 639 (D. Md. 2002) (treating motion to dismiss as motion for summary judgment where the court had to consider "two items of evidence extrinsic to the pleadings"). Of course, Ms. Ahmed's motion for partial summary judgment as to her FMLA claim will also be reviewed under the Rule 56 standard.

Federal Rule of Civil Procedure 56(a)[3] provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

---

[3] Rule 56 was amended effective December 1, 2010; the amendments moved (without making material change) the substance of subsection (c) to subsection (a).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to … the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)). When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation and citation omitted).

### A. *Family and Medical Leave Act Claim*

Both The Salvation Army and Ms. Ahmed have moved for summary judgment as to the FMLA claim. Ms. Ahmed alleges that The Salvation Army unlawfully interfered with the exercise of her FMLA rights when it discharged her while she was on FMLA leave. (Pl.'s Mem. Partial Summ. at 12.) The Salvation Army counters that Ms. Ahmed was not on actual FMLA leave when it terminated her employment, and, therefore, she has no actionable FMLA claim. (Def.'s Mem. Summ. J. at 9.) Because Ms. Ahmed's Certification Form was incomplete as a

matter of law, her motion for partial summary judgment will be denied and The Salvation Army's motion for summary judgment will be granted.

The FMLA is designed "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). When the FMLA applies, it allows eligible employees to take up to a total of twelve workweeks of leave during any twelve-month period, *id.* § 2612(a)(1), and gives them the right to return to the same or equivalent position held when such leave commenced, *id.* § 2614(a)(1)(A)-(B). An employee is entitled to FMLA leave for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D).

The FMLA creates two types of claims: interference and retaliation. Interference claims are based on alleged attempts by an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right protected by the FMLA. *Id.* § 2615(a)(1). These claims encompass violations of the right to be reinstated to a similar position after taking leave. Retaliation claims result from an employer allegedly "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA. *Id.* § 2615(a)(2). Here, Ms. Ahmed claims only an interference violation, alleging The Salvation Army's "termination of [Ms. Ahmed's] employment on or about December 29, 2010 was in violation of the FMLA, … which prohibits interference with an employee's exercise of her FMLA rights." (Compl. ¶ 31.)

To establish an FMLA interference claim, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Rodriguez v. Smithfield*

*Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). In the present case, the parties do not dispute that Ms. Ahmed was an eligible employee, *see* 29 U.S.C. § 2611(2)(A), or that The Salvation Army was covered by the FMLA, *see* 29 U.S.C. § 2611(4)(A)(i). Moreover, for purposes of this decision, this court assumes that Ms. Ahmed was entitled to leave under the FMLA, as the need for open heart surgery constitutes a "serious health condition" that rendered Ms. Ahmed unable to perform the functions of her job. *See* 29 U.S.C. § 2612(a)(1)(D). Therefore, if Ms. Ahmed had otherwise complied with the FMLA's requirements, her entitlement to the substantive protections under the FMLA would be clear.

Before an employee can bring an interference claim, however, she must demonstrate that she was entitled to protections under the FMLA. Specifically, the employee must provide "adequate notice of her intention to take leave." *Rodriguez*, 545 F. Supp. 2d at 516. An employer may require that a request for leave be supported by "a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a); *see also Rhoads v. F.D.I.C.*, 257 F.3d 373, 383 (4th Cir. 2001). A certification is sufficient "if it articulates: the date on which the serious health condition commenced; its probable duration; the 'appropriate medical facts,' within the health care provider's knowledge, regarding this condition; and a statement that the employee is unable to perform the functions of her position." *Rhoads*, 257 F.3d at 383 (quoting 29 U.S.C. § 2613(b)(1)-(3), (4)(B)). A certification is incomplete "if the employer receives a certification, but one or more of the applicable entries have not been completed." 29 C.F.R. § 825.305(c). If the employer considers the certification incomplete, the employer shall advise the employee of this belief, "state in writing what additional information is necessary to make the certification complete and sufficient," and "provide the employee with seven calendar

days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure" any deficiency. *Id.*

Based on the undisputed facts established in this record, viewed in the light most favorable to Ms. Ahmed, it is clear Ms. Ahmed's Certification Form was incomplete as a matter of law. Shortly after Ms. Ahmed notified The Salvation Army that she would need open heart surgery and would be absent from work, The Salvation Army instructed Ms. Ahmed to complete and return several FMLA forms, including a Certification Form. Although Ms. Ahmed returned a Certification Form signed by her health care provider on November 6, 2010, the form only identified the medical name of her upcoming surgery: "For Redo Aortic + Mitral Valve Replacement." (*See* Def.'s Mem. Summ. J., Decl., Ex. 9.) It did not include responses to the seven separately numbered questions or their various sub-parts. Most importantly, the Certification Form did not contain any information regarding the date on which Ms. Ahmed's heart condition commenced, the condition's expected duration, Ms. Ahmed's expected period of incapacity, or a statement that Ms. Ahmed was unable to perform the functions of her job. (*See id.*) On November 11, 2010, The Salvation Army notified Ms. Ahmed that it considered her Certification Form to be incomplete and allowed her until November 19, 2010 to submit a "complete and legible" form. (*Id.* at Ex. 10.) Ms. Ahmed submitted a new Certification Form on November 18, 2010, which was virtually identical to the November 6 Certification Form. (*Id.* at Ex. 11.) Both the November 6 and November 18 Certification Forms were incomplete as a matter of law because they did not contain any information regarding the date on which Ms. Ahmed's serious health condition commenced, the health condition's expected duration, Ms. Ahmed's expected period of incapacity, or a statement that Ms. Ahmed was unable to perform the functions of her job. *See Rhoads*, 257 F.3d at 383; 29 U.S.C. § 2613(b)(1)-(3), (4)(B).

Despite never receiving a complete Certification Form, The Salvation Army would not be entitled to summary judgment if Ms. Ahmed could show The Salvation Army did not comply with relevant FMLA regulations. However, the undisputed facts demonstrate The Salvation Army complied with the FMLA's regulations before it terminated Ms. Ahmed's employment. Because The Salvation Army considered Ms. Ahmed's Certification Forms to be incomplete, it was required to "state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). As described above, on November 11, 2010, The Salvation Army notified Ms. Ahmed that it considered her November 6 Certification Form incomplete and allowed her until November 19, 2010 to submit a "complete and legible" form. (Def.'s Mem. Summ. J., Decl., Ex. 10.) Ms. Ahmed correctly notes that the November 11, 2010 correspondence "fails to specifically state what information is being requested" and therefore may not satisfy 29 C.F.R. § 825.305(c). (Pl.'s Mem. Partial Summ. J. at 9.) However, on November 24, 2010—after Ms. Ahmed submitted the revised November 18 Certification Form—The Salvation Army again informed Ms. Ahmed that her Certification Form "did not include sufficient information for The Salvation Army to designate [Ms. Ahmed's] leave as Family/Medical Leave." (Def.'s Mem. Summ. J., Decl., Ex. 12.) This time, The Salvation Army explained that several necessary items were not completed, including information regarding Ms. Ahmed's "ability to perform some or all of [her] job functions" and her "period of incapacity." (*Id.*) Ms. Ahmed concedes that the November 24, 2010 correspondence stated with sufficient specificity what additional information The Salvation Army required for Ms. Ahmed's Certification Form to be complete. (Pl.'s Mem. Partial Summ. J. at 9-10.) Accordingly, on November 24, 2010, The Salvation Army satisfied the requirement

under 29 C.F.R. § 825.305(c) to state in writing what additional information was necessary to make Ms. Ahmed's Certification Form complete.

Moreover, contrary to Ms. Ahmed's contention, the undisputed facts show The Salvation Army provided Ms. Ahmed with a reasonable time to cure the deficiencies in her Certification Forms. *See* 29 C.F.R. § 825.305(c). After notifying an employee that her Certification Form is incomplete, an employer must "provide the employee with seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure" any deficiency. *Id.* The Salvation Army specifically informed Ms. Ahmed what additional information was necessary to make her Certification Form complete on November 24, 2010.[4] Thus, under the FMLA regulations, Ms. Ahmed had until December 1, 2010 to submit a complete Certification Form. On December 2, 2010, after Ms. Ahmed had been absent from work for three days "without acceptable documentation," The Salvation Army asked Ms. Ahmed to submit a completed Certification Form by December 8, 2010. (Def.'s Mem. Summ. J., Decl., Ex. 13.) This deadline was extended to December 21, 2010 after The Salvation Army could not confirm that Ms. Ahmed received the December 2, 2010 correspondence. (*Id.* at Ex. 14.) Ms. Ahmed never submitted an additional Certification Form, and after giving Ms. Ahmed far more than the required seven days to cure the deficiency, The Salvation Army terminated Ms. Ahmed's employment on December 29, 2010. (*See* Def.'s Mem. Summ. J., Decl., Ex. 15.) At this point Ms. Ahmed had been out of the hospital for seventeen days. Accordingly, The

---

[4] Ms. Ahmed argues that The Salvation Army was required to "advise Ms. Ahmed of the requisite seven (7) calendar days to submit a corrected [Certification Form]." (Pl.'s Mem. Partial Summ. J. at 10.) This argument is without merit, however, as the FMLA regulations do not require the employer to specifically inform the employee of the seven day cure period. *See* 29 C.F.R. § 825.305(c).

Salvation Army satisfied the requirement under 29 C.F.R. § 825.305(c) to provide Ms. Ahmed with at least seven calendar days to cure the deficiencies in her Certification Forms.

Ms. Ahmed further argues that even if The Salvation Army provided her with seven days to cure the deficiencies in her Certification Forms, "such time would not have been practicable under the circumstances" in light of her heart surgery on December 1, 2010. (Pl.'s Mem. Partial Summ. J. at 11.) In so arguing, Ms. Ahmed seeks to invoke the equitable provision of 29 C.F.R. § 825.305(c), which specifies that an employer must "provide the employee with seven calendar days (*unless not practicable under the particular circumstances despite the employee's diligent good faith efforts*) to cure" any deficiency. 29 C.F.R. § 825.305(c) (emphasis added). In *Peter v. Lincoln Technical Inst., Inc.*, 255 F. Supp. 2d 417, 441 (E.D. Pa. 2002), the United States District Court for the Eastern District of Pennsylvania analyzed identical regulatory language from 29 C.F.R. § 825.305(b) and noted that good faith requires "at least that the employee contact his employer by telephone and make it aware that he is unable to return his [Certification Form] before the deadline." While it is true that Ms. Ahmed underwent heart surgery on December 1, 2010, she has not presented evidence of her good faith efforts to cure the deficiencies in her Certification Forms between November 24, 2010 (the date on which she was specifically notified of the deficiencies) and December 29, 2010 (more than seven days after the second notification of the deficiencies). She did not even contact her doctor to ask him to complete the Certification Form. Accordingly, Ms. Ahmed's argument fails.

Finally, despite Ms. Ahmed arguments to the contrary, The Salvation Army was not required to contact Ms. Ahmed's health care provider directly for clarification of her Certification Forms. (*See* Pl.'s Mem. Partial Summ. J. at 12.) The FMLA regulations state that an employer "*may* contact the health care provider for purposes of clarification" after an

employee submits a complete and sufficient Certification Form. 29 C.F.R. § 825.307(a) (emphasis added). Because the term "may" is permissive, The Salvation Army was not required to contact the Ms. Ahmed's health care provider for clarification. *See, e.g.*, *Rhoads*, 257 F.3d at 385-86 (analyzing the FMLA's "second opinion" statutory and regulatory language and concluding that "[b]ecause the term 'may' is permissive, the plain language of the statute indicates that an employer who questions the validity of a certification has the option of seeking a second or third opinion, without being required to do so"). Moreover, the term "clarification" means "contacting the health care provider to understand the handwriting on the [Certification Form] or to understand the meaning of a response." 29 C.F.R. § 825.307(a). When, as here, the employee's Certification Form is incomplete, this FMLA regulation is inapplicable. Therefore, Ms. Ahmed's argument is without merit.

Because Ms. Ahmed did not submit a completed Certification Form, The Salvation Army's duty to provide FMLA leave was never triggered, and Ms. Ahmed was not entitled to protections under the FMLA. In addition, The Salvation Army complied with the FMLA and its corresponding regulations by advising Ms. Ahmed that her Certification Form was incomplete, stating in writing what additional information was necessary to make the form complete, and providing Ms. Ahmed with more than seven calendar days to cure the deficiency. *See* 29 C.F.R. § 825.305(c). Accordingly, The Salvation Army's motion for summary judgment as to Ms. Ahmed's FMLA claim will be granted, and Ms. Ahmed's motion for partial summary judgment will be denied.

   B. *Americans with Disabilities Act Claim*

In Count II of her complaint, Ms. Ahmed claims that The Salvation Army "discriminated against [her] by firing her on the pretext that she did not completely fill out her medical

certification" and that the "true motivation for terminating [Ms. Ahmed's] employment was because of her disability." (Compl. ¶ 38.) Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to … discharge of employees … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Wrongful discharge claims under the ADA are analyzed under the framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995). Under this framework, the plaintiff must first "prove a *prima facie* case of discrimination by a preponderance of the evidence." *Id.* at 58. If the plaintiff does so, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation " for its employment action. *Id.* Finally, if the defendant can present such a reason, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citations omitted). Based on the record before this court, Ms. Ahmed has failed to satisfy her obligation.

To establish a *prima facie* case of wrongful discharge, a plaintiff must show: (1) she has a disability; (2) she was otherwise qualified for the position; and (3) the "discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Darcangelo v. Verizon Md., Inc.*, 189 F. App'x 217, 218 (4th Cir. 2006) (quoting *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)). The Salvation Army has not argued that Ms. Ahmed is not disabled under the ADA. Instead, The Salvation Army contends that it is entitled to summary judgment because: (A) Ms. Ahmed is not a qualified individual with a disability; and

(B) she was not terminated because of any disability.[5]  Although "[p]roving a *prima facie* case is a 'relatively easy' burden," *Figueroa v. Geithner*, 711 F. Supp. 2d 562, 572 n.12 (D. Md. 2010) (citations omitted), Ms. Ahmed has not done so here.

Assuming without deciding that Ms. Ahmed was a qualified individual under the ADA,[6] the undisputed facts demonstrate that The Salvation Army's decision to terminate Ms. Ahmed was because of her unexcused absences and not because of a disability.  As described above, The Salvation Army made numerous attempts to obtain a completed Certification Form for Ms. Ahmed's requested FMLA leave.  Despite Ms. Ahmed having twice submitted incomplete Certification Forms, The Salvation Army nevertheless gave her additional opportunities to cure the deficiencies.  It was not until Ms. Ahmed was absent for twenty-three days without approval that The Salvation Army finally terminated her employment.  Therefore, the undisputed evidence precludes an inference that Ms. Ahmed's "discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook*, 252 F.3d at 702 (citations omitted).

---

[5] The Salvation Army also contends that Ms. Ahmed's wrongful discharge claim should be dismissed for failure to state a claim because it does not allege that she exhausted her administrative remedies before filing suit.  Because this court will deny as moot Ms. Ahmed's motion to amend her complaint, this argument is not addressed.  *See infra* Part III.

[6] The ADA defines a "qualified individual" with a disability as "an individual who, with or without accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The Salvation Army contends that the factual allegations and the communications referenced in the complaint "preclude an inference that [Ms. Ahmed] was a qualified individual" because she "was absent and unable to perform any of the essential functions of her position." (Def.'s Mem. Summ. J. at 10-11).  Although it is true that "a regular and reliable level of attendance is a necessary element of most jobs" and that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA," s*ee Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (citations omitted), this court need not decide the issue.  As explained below, The Salvation Army terminated Ms. Ahmed because of her unexcused absences and not because of any disability.

Even if Ms. Ahmed could present a *prima facie* case of wrongful discharge, the undisputed facts show a legitimate, non-discriminatory reason for The Salvation Army's decision to discharge Ms. Ahmed. *See Ennis*, 53 F.3d at 58. The Salvation Army's burden here is one of production, not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The Salvation Army has presented evidence that its decision to terminate Ms. Ahmed's employment was based on her unexcused absences. On December 2, 2010, after Ms. Ahmed had been absent from work for three days without providing a completed FMLA Certification Form, The Salvation Army explained that the failure to provide documentation for her unauthorized absences would result in her termination. (Def.'s Mem. Summ. J., Ex. 13.) The Salvation Army's policies provide for termination of employment after three days of unauthorized absence. (Def.'s Mem. Summ. J., Decl. at ¶ 14 n.2.) Accordingly, The Salvation Army has articulated a legitimate, non-discriminatory reason for Ms. Ahmed's discharge. Because The Salvation Army can show a legitimate, non-discriminatory reason for discharging Ms. Ahmed, she would then be required to carry the burden of demonstrating that the reasons for her termination were merely a pretext for discrimination. *See Evans*, 80 F.3d at 960. Ms. Ahmed has not offered any evidence of pretext and therefore has not met her burden here. Accordingly, The Salvation Army's motion for summary judgment as to Ms. Ahmed's ADA claim will be granted.

## II.   Ms. Ahmed's Motion for Rule 56(d) Relief

Under Rule 56(d),[7] "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain

---

[7] Rule 56 was amended effective December 1, 2010; the amendments moved (without making material change) the substance of subsection (f) to subsection (d).

affidavits or declarations to take discovery; or (3) issue any other appropriate order." A Rule 56(d) affidavit cannot conclusorily state that additional discovery is required. It must specify "why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts." *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (internal quotations omitted). Ms. Ahmed has not presented grounds to permit discovery here.

In her Rule 56(d) affidavit, Ms. Ahmed states that discovery is necessary "to gain additional evidence to properly rebut" The Salvation Army's statement of undisputed facts. (Pl.'s Opp'n, Ex. 2 at 3.) Ms. Ahmed seeks: (i) to investigate the influence supervisors and management had on each deciding official; (ii) to investigate whether The Salvation Army has imposed less stringent Certification Form requirements on employees without any disabilities or with less severe disabilities than Ms. Ahmed; (iii) to investigate the records, notes, and documents relating to the incidents of employees requesting and The Salvation Army granting leave; (iv) access to all testimony and evidence obtained in the EEOC investigation; and (v) to examine the list of employees who have engaged in the same or more severe conduct as Ms. Ahmed but who have not been disciplined and/or terminated. (*Id.* at 3-4.) Ms. Ahmed's affidavit does not meet the standard outlined above, as it does nothing more than conclusorily state that additional discovery is required. Her ADA cause of action would fail under Rule 12(b)(6), and the Rule 56(d) motion is simply "fishing" for facts to support a claim of disability discrimination.[8] Accordingly, Ms. Ahmed's Rule 56(d) motion will be denied.

---

[8] Although not raised by The Salvation Army, it should be noted that Ms. Ahmed's complaint does not seem to allege facts sufficient to state that she was disabled within the meaning of the ADA. In her complaint, Ms. Ahmed alleges only that she "has suffered from a chronic heart condition, and as such, is an individual with a disability under the [ADA]." (Compl. at ¶ 36.) Assuming that Ms. Ahmed's chronic heart condition constitutes a physical impairment under the

**III. Ms. Ahmed's Motion to File Amended Complaint**

Ms. Ahmed seeks leave to amend her complaint to specifically allege that she exhausted her administrative remedies as required by the ADA. *See Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) (explaining that the ADA incorporates the enforcement procedures that apply under Title VII, including exhaustion of administrative remedies). Because this court will grant The Salvation Army's motion for summary judgment as to Ms. Ahmed's ADA claim for reasons unrelated to this minor pleading deficiency, Ms. Ahmed's motion to file an amended complaint will be denied as moot.

## CONCLUSION

For the foregoing reasons, The Salvation Army's motion to dismiss or, in the alternative, for summary judgment will be granted; Ms. Ahmed's motion for partial summary judgment will be denied; Ms. Ahmed's Rule 56(d) motion will be denied; and Ms. Ahmed's motion to file an amended complaint will be denied as moot. A separate Order follows.


<u>December 28, 2012</u>                                              <u>      /s/                              </u>
Date                                                                          Catherine C. Blake
                                                                                   United States District Judge

---

ADA, Ms. Ahmed has failed to allege that her condition substantially limits her in the performance of a major life activity. Indeed, her complaint does not identify any major life activity that is limited by her chronic heart condition, nor does it contain any facts regarding the impact of her chronic heart condition on her ability to perform a major life activity. *See Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (concluding that plaintiff did not allege "facts from which [the court] can reasonably infer that he suffered from a disability under the ADA" where the plaintiff "failed to allege that his conditions substantially limited him in his performance of a major life activity").